*Nov. 2d.*

---

## OLIVER HAYDEN *et al. versus* The Inhabitants of STOUGHTON.

Devise of real estate to a town for the purpose of building a schoolhouse, provided
it is built within 100 rods of the place where the meetinghouse now stands. *Held*,
that this was a devise upon a condition subsequent; that the estate vested ac-
cordingly in the devisees ; that it was forfeited by a neglect for twenty years to
comply with the condition; and that it passed to the residuary devisee, and not to
the heir, there being an interest in the testator not specifically devised, depending
upon the performance or non-performance of the condition.

WRIT *of entry.* The parties stated the following case.

Lemuel Drake died seised in fee of the demanded prem-
ises and of several other parcels of land in Stoughton, in
1806. In his will, which was approved and allowed on the
5th of November in that year, the demanded premises were
disposed of as follows : — " I give to the town of Stoughton
my lot of land in said town, which I bought of Ephraim
Wales, (the land in controversy,) containing about eight
acres ; also about twenty-five acres of woodland in said town,
which I have bargained for of Elijah Belcher ; and in failure
of receiving a deed of said Belcher for said land, I give to
said town three hundred dollars. Both of the above pieces of

529

land (or money instead of the last piece) I give .o said town
for the purpose of building a schoolhouse for the use of a free
grammar school (or other school, as said town may direct.)
Provided said schoolhouse is built by said town within one
hundred rods of the place where the meetinghouse now stands."
The testator gives a small legacy to a nephew and another to
a niece, to be paid when they should respectively arrive at
the age of eighteen years ; but if either of them should die
before that time, then the legacy should go to the use of the
school.   He also gives to the precinct in ˙Stoughton certain
lots of land, part for a parsonage and part for the use of the
ministry, but " if the meetinghouse is removed from the lot
it now stands on, and no other built in its stead," then he
gives these lots " to the use of the free school above men-
tioned."   He appoints his wife executrix, and besides some
specific devises to her, the will contains the following provi-
sion : — " All the remainder of my estate, of what name or
nature soever, or wherever the same may be found, I give
and bequeath to my beloved wife, Abigail Drake, her heirs
and assigns for ever."

The demandants are part of the heirs at law of Abigail
Drake, but not of Lemuel Drake.

On the 5th of May, 1806, the town of Stoughton voted to
" accept the donation of Lemuel Drake, and to make pro-
vision for performing the conditions on their part, agreeable to
the will of said deceased, as soon as the circumstances of the
town will permit."

Abigail Drake died in 1806, intestate ; and administration
de bonis non with the will of Lemuel Drake annexed, was
committed to Samuel Talbot, who on the 14th of March,
1817, delivered possession of the demanded premises to the
town of Stoughton and accounted for the rent up to that time,
and the town has occupied the premises ever since.   But the
town had not built any schoolhouse within one hundred rods
of the meetinghouse before the commencement of this action.

The records of the town prior to the date of the writ,
and reports of committees referred to in such records, were
made part of the case.   They showed that the subject of the
donation had been frequently before the town, but it did not

*Margin:* Hayden
v.
Stoughton

*Margin:* 530

Hayden
*v.*
Stoughton.

appear from them that the town had begun to perform the con ditions of the devise. In 1818 the town voted "to take 116 dollars and one year's interest of the same (it being the rent of a meadow and the interest of a donation given to the town by Mr. Lemuel Drake &c.) for the use o˙ schooling the present year, and relinquish so much of the school money that is granted by the town the présent year for schooling."

If on these facts and others appearing in the records and reports above mentioned, the town of Stoughton had forfeited the land demanded, and if the demandants were entitled to reclaim it, the tenants were to be defaulted; otherwise the demandants were to become nonsuit.

*Oct. 21st.*     *Metcalf*, for the demandants.

1. Is the land forfeited ?

The words *ad faciendum*, or *faciendo*, or *eâ intentione*, or *ad effectum*, or *ad propositum*, that the devisee shall do or not do such an act, make a conditional estate. Co. Lit. 204 *a*; Com. Dig. *Condition*, *A* 4, and *Devise*, *N* 9. For breach of condition the heir may enter and hold the land. Shep Touch. 450; 2 Bl. Com. c. 10. The conduct of the ten ants would be a misemployment of property given to charita ble uses, and would be redressed, in England, under *St.* 43 *Eliz. c.* 4. Duke, (*Bridgman's ed.*) *c.* 10, § 7. As that statute is not in force here, and the Court has no chancery power to regulate charities, the common law doctrine of for feiture and entry for breach of condition, is to be applied. A legatary refusing the office or duty imposed on him by the will, though but in part, forfeits his legacy in the whole. Godolph. 425, § 16.

2. Is the residuary devisee entitled to reclaim the land ?

These three positions are sustained by the authorities to be cited. 1. There is no difference in effect between the differ ent phrases used in residuary clauses, *provided the words are sufficient to pass real estate*: As "rest of my estate" — "residue" — "remainder" — "all my estate not before dis posed of" — "what remains," &c. 2. It is not necessary, in order to give force to a residuary clause, that the testator should contemplate its effect, or know on what property it will operate. 3. All the residue, of whatever nature, will

pass under a residuary clause sufficient to pass real estate, unless a contrary intention appears on the face of the will.

As to *personal* property, it has been decided that *lapsed* legacies, whether general or specific, and whether charged on real estate or not, fall into the residue and pass by the residuary clause. *Cambridge* v. *Rous*, 8 Ves. 14 ; *Roberts* v. *Cooke*, 16 Ves. 451 ; *Smith* v. *Fitzgerald*, 3 Ves. & Beames, , 2 ; 2 Roper on Leg. (2d ed.) 488, *et seq.* So of *void* legacies. *Durour* v. *Motteux*, 1 Ves. sen. 321 ; *Jackson* v. *Hur lock*, Ambl. 487 ; *Page* v. *Leapingwell*, 18 Ves. 463 ; *Brown* v. *Higgs*, 4 Ves. 708 ; *Shanley* v. *Baker*, ibid. 732. So of legacies *that fail*, " *no matter how*; the residuary devisee shall have the benefit of them." *Per* Master of the Rolls. *Kennett* v. *Abbott*, 4 Ves. 803, 811. This was the case of a legacy given to a supposed husband, who was found to have another wife, and it was held to pass to the residuary legatee. Lapsed and void legacies fall under the rule thus broadly announced by the Master of the Rolls. So do bequests upon a contingency too remote. *Crooke* v. *De Vandes*, 11 Ves. 330. So if the legatee should refuse to accept, or should be too imperfectly designated, or should be dead when the will was made, or should (as in the case at bar) misapply the property bequeathed. *M'Leod* v. *Drummond*, 17 Ves. 169.

As to *real* estate, it is not denied that *lapsed* devises, after many conflicting decisions, form an exception, in England, to the general rule, and do not pass to the residuary devisee. *Peat* v. *Chapman*, 1 Ves. sen. 542 ; *Doe* v. *Underdown*, Willes, 293. But this distinction between real and personal property has never been recognised by any reported adjudication in the United States, and seems to rest on no very substantial grounds, even in England. It forms a part of the political system, favored by the courts, of restricting devises and preventing the division of estates ; and was not established until after the settlement of this commonwealth. Probably, therefore, it would not be adopted here. At any rate, it is not one of " the laws that *have heretofore* been adopted, used and approved in the Colony, Province or State."

With the exception of lapsed devises, there is no distinction in the English law, on this point, between personal and

Hayden
v.
Stoughton.

real property.   Thus devises *that fail of effect*, fall into the residue and do not descend to the heir.   As where the devisee was too imperfectly designated.   *Benet* v. *French*, cited in 1 Leon. 251.   So where the devisee was dead before the will was made.   *Doe* v. *Sheffield*, 13 East, 526.

Fee-farm rents pass by a residuary clause ; *Countess of Bridgewater* v. *Duke of Bolton*, 6 Mod. 106 ; in which case Lord Holt very ably expounds the whole doctrine.   See also *Bland* v. *Lamb*, 2 Jac. & Walk. 399 ; *Cole* v. *Clayborn*, 1 Wash. 262.   A reversion, however remote or latent, passes by a devise of the residue.   *Wheeler* v. *Walroone*, Alleyn, 28 ; *Rooke* v. *Rooke*, 1 Freem. 519 ; *Atkyns* v. *Atkyns*, Cowp. 808 ; *Goodright* v. *Marquis of Downshire*, 2 Bos. & Pul. 600, where Lord Alvanley says, " It is not necessary that the testator's mind should be active in including it ;" which doctrine is sanctioned by the King's Bench in the case of *Doe* v. *Weatherby*, 11 East, 322.

" If any estate or contingent· interest (says Willes C. J.) in the premises in question, remains undisposed of at the time of making the will," it passes by the residuary clause   Willes, 300.   In the case at bar there was a contingent interest in the lands demanded, undisposed of at the time L. Drake made his will ; as is fully shown by *Doe* v. *Scott*, 3 Maule & Selw. 300 ; which case is not to be distinguished in principle from the present

*Leland*, for the tenants.   The devise was upon a condition subsequent.   The schoolhouse was not to be built before it took effect, but the property was to be applied in erecting the building.   The estate therefore vested in the tenants. 2 Bl. Com. 152 ; Com. Dig. *Condition*, *C* ; *Hotham* v. *E. I. Co.* 1 T. R. 645.

The question then is, has the estate been forfeited.   The demandants say it has, because the condition has not been performed in a reasonable time, and because the estate devised has been misappropriated.

We deny that there has been any misappropriation.   The meadow mentioned in the vote of the town has no connexion with the demanded premises ; at any rate, the land has not been misapplied, but only the rents and interest of the money

bequeathed.    The will contains no express direction as to income, and the application of it in the manner stated may be considered as a loan to the town, as the property was entirely within their control.

As to the non-performance of the condition, — the testator was an inhabitant of Stoughton ; he knew that it was divided into several school districts, each furnished with a schoolhouse, that it was a small town and not bound to maintain a grammar school, and he made the devise without limiting any period for erecting the schoolhouse.    What then is a reasonable time ?    We submit that it must be referred to the discretion of the town to perform the condition when it may suit their convenience.    Further, where the devise is exclusively for the benefit of the devisee, and no time is limited for performing the condition, he may perform it at any time during his life.    Com. Dig. *Condition, G* 3, *G* 4.    So here the town has its " life," that is to say, being a corporation, it may take its own time.    The schoolhouse is to be erected for the benefit of the town, and no one else is interested in the performance of the condition.

But suppose there has been a forfeiture, the demandants cannot take advantage of it.    The estate descends to the heir of the person last seised.    A residuary devise and a residuary legacy are subject to different rules.    A lapsed legacy falls into the residuum, because in determining what personal property remains not disposed of, regard is to be had to the time of the testator's death.    But in the case of real estate it is necessary to look to the time of making the will.    Where, upon examining the will, it appears that all the real estate is devised, whatever is forfeited goes to the heir , but any estate which does not appear to be specifically devised, belongs to the residuary devisee.    That a lapsed devise descends to the heir, is very clear ; and it is apprehended that the same rule applies to a devise which is void.    2 Roper on Leg. 487, 488 ; 4 Bac. Abr. 429, *Legacies, I ; Goodright* v. *Opie,* 8 Mod. 123 ; *Wright* v. *Horne,* ibid. 221 ; *Doe* v. *Underdown,* Willes, 293 ; 4 Dane's Abr. 584, § 17 ; *Doe* v. *Scott,* 3 Maule & Selw. 300.    In the case at bar the whole fee was devised.    There was no contingency undisposed of

**534**

Hayden
*v.*
Stoughton.

The whole estate vested. In 3 Maule & Selw. 300, the devise was upon a condition precedent to be performed within six months, and the estate, until performance, was undevised.

The cause was continued for advisement, and the opinion of the Court was afterwards drawn up by

PUTNAM J. The first question which the case presents for decision is, whether the devise was upon a condition precedent or subsequent. We are all clearly of opinion that it was upon a condition subsequent, and that the estate vested immediately in virtue of the devise. The fee did not rest in abeyance until the schoolhouse should be built, but was to be forfeited if it should not be built in a reasonable time.

The next inquiry is, whether the devisees have forfeited the estate by reason of their not having built the schoolhouse, according to the condition of the devise. Where no particular time is mentioned for the performance of a condition subsequent, the law requires that it should be done in a reasonable time. It is otherwise of conditions precedent, which are for the advantage of the party performing the first act. They may be performed at the will of the party and at such time as he pleases. Plowd. 16. But in the case at bar benefit was conferred presently by the devise of the estate. And the party entitled to have the estate upon a forfeiture is not to be bound by the mere will and pleasure of the devisees as to the time or manner of performing the condition, for that would in effect destroy the condition. They might never perform it. The devisees are therefore to perform in a reasonable, viz. a convenient time, — "according to the nature of the thing to be done." Com. Dig. *Condition*, *G* 5. A devise upon condition to pay debts ; the debts must be paid in convenient time.

The devisees, by accepting this devise and entering into the land, undertook to build the schoolhouse in a convenient time, within one hundred rods of the place where the meeting-house then stood. It is said in Co. Lit. 208 *b*, that if one make a feoffment in fee, upon condition that the feoffee shall enfeoff a stranger, and no time limited, the feoffee shall not have during his life to make the feoffment, for then he should take the profits in the mean time to his own use, which the

stranger ought to have, and therefore he ought to make the feoffment as soon as conveniently he may ; and so it is of the condition of an obligation.

The intent of the testator was, that the schoolhouse should be built at the place which he designated ; not that the devisees should have the land without the charge. The building of the house is a local act, which the devisees should have performed, for the accomplishment of the benevolent design of the testator, in a convenient time. Upon the same reason as is said in *Bothy's case*, 6 Co. 31, that where the act is local, and the obligor may perform it for the benefit of the obligee in his absence, there the obligor ought to do it in a convenient time. The house might be built by the devisees without the concurrence of any other party, so the case is not like that which is put, of a local act to be done with the concurrence of an obligor and obligee ; in which case the obligor hath his lifetime to perform, unless hastened by request. It is clear to our minds, that the devisees were not at liberty to postpone the building at their own pleasure, but that they have forfeited the land, if they have permitted an unreasonable time to pass without performing the condition.

Of that the Court must determine from the facts which are found.[1] The will was proved in 1805. In 1806 the inhabitants voted to accept the estate and perform the condition, — twenty years before the action was brought, — and no schoolhouse has been built. The inhabitants of the town, during this long period, often met and passed votes contradictory and trifling, and still continuing to take the rents and profits of the land. They have omitted to do in that long period of time, what might have been done in a month as well as in a century. It seems to us that they have not conformed to the manifest intention of the testator. They have forfeited the estate.

We are next to consider who are entitled to the estate upon its forfeiture. Does it belong to the heirs at law of the testator, or to the plaintiffs, who represent the residuary devisee, to whom the testator devised all the remainder of his

[1] See 1 Stark. Ev. (5th Am. ed.) 451, *et seq.; Ellis* v. *Paige,* 1 Pick. (2d ed.) 50, n. 2

estate, of what name or nature soever, or wherever the same might be found ?

In the construction of wills, the first and great object is to give effect to the intent of the testator, if it can be done without violating any rules of the law.[1] And it is a rule, that the heir at law is not to be disinherited, unless such appears clearly to be the intention of the devisor.[2] If the devise of land should be void because the devisee is incapable of taking, and the devisor should give all his real estate not before disposed of, the land would be included in the residuary clause. It is said in Perkins, § 564, that in the case of a devise, the remainder shall not be avoided by the entry of the heir for the condition broken, because the will of the devisor shall be observed in as much as it may be.

So in *Benet* v. *French*, cited in *Sherewood and Nonne's case*, 1 Leon. 251, where a man seised of lands devised a parcel called Gages to the erecting of a school, and all his other lands to French in fee, the devise of Gages was held void, because no person was named ; and it was further holden, that it passed by the general words to French. I suppose the court construed it to mean other lands *not before devised*, because the Gages were not before devised, by reason of there being no devisee named who should take the land, and so passed to the residuary devisee. Upon the same principle, if the devisee died before the making of the will, the devise is void, and the land shall pass by the residuary clause. *Doe* v. *Sheffield*, 13 East, 526, where the testator devised land to the sisters of J. H. as tenants in common. There had been three sisters of J. H., but two died before the testator. He then gave all his messuages, lands, &c., not therein before disposed of, to Scott. And the court held, touching the point we are now considering, that if the surviving sister had not taken the whole, but only a third, the residuary devisee would have taken the two thirds, because the testator made no disposition of the two thirds, as the devisees of the two thirds died before the making of the will.

---

[1] See *Ingell* v. *Nooney*, 2 Pick. (2d ed.) 366, n. 4.

[2] Ram on Exposition of Wills, 257, *et seq.* ; *Schauber* v. *Jackson*, 2 Wendell, 13.

It would not be considered as a valid devise, for the want of a devisee in existence at the time of making the will ; and no better than if the devise had been of a particular estate to a monk ; which would be void, and the remainder-man would take immediately, as the monk was not capable of taking at all. Perk. § 566, 567.[1]

But where there was a devisee in existence, capable of taking the land at the time when the will was made, but who should die before the will should be consummated by the death of the devisor, it would be considered as a lapsed devise. And in such case, inasmuch as the devisor had disposed of his whole interest in the land, if he had died immediately after making the will, the estate would have vested in the devisee. The law supposes that the devisor did not contemplate or intend that the residuary clause or devise of all his land not before disposed of, should embrace land contained in the lapsed devise. The residuary clause touching real estate is to include all the interests of the devisor which he had not disposed of when the will was made, and the heir is not to be defeated on account of the contingency of the death of the devisee after the making of the will ; which the devisor could not foresee.

It is true that in regard to personal property, the law allows the residuary legatee to take whatever shall eventually turn out not to be disposed of, whether it arise from accident or design. And the counsel for the plaintiffs have argued, that there is no good reason for the distinction, and that lapsed devises of real estate should go to the residuary devisee, as well as lapsed legacies of personal. There is however a marked difference in the effect of a will upon personal, and upon real property. The personal estate which is acquired after the will passes by the will, but real property acquired after the will does not pass, and is not affected by any disposition in a will made before its acquisition. The testator can devise only such real estate as he has at the time of making the will.[1] The law upon this subject, viz. that the heir, and not the residuary legatee or devisee shall have the advantage

538

---

[1] See *Greene* v. *Dennis*, 6 Connect. R. 293.
[1] But see Revised Stat. *c.* 62, § 3 ; *Ballard* v. *Carter*, *ante*, 114, n. 1.

of lapsed devises, is now settled, and has been so held for more than half a century. *Doe* v. *Underdown*, Willes, 293, and the cases cited, particularly *Wright* v. *Hall*, cited in Willes, 299. In which last case Lord *King* says, "The testator makes his will as if he were to die that moment, and it cannot be presumed that he intended to devise a contingency which afterwards happened, (viz. the death of the devisee after the will and before the devisor,) and which he could not foresee."

So in *Gravenor* v. *Hallum*, Ambl. 645, the Lord Chancellor *Cambden* considers the law to be settled. So Lord Chancellor *Hardwicke*, in *Durour* v. *Motteux*, 1 Ves. sen. 321. See also *Cambridge* v. *Rous*, 8 Ves. 25.

We are disposed to think this point settled, and upon as good reason certainly as the rule applicable to lapsed personal legacies.

But the devise under consideration cannot be viewed as lapsed. A lapsed devise is where the devisee dies after the making of the will and before the testator. But here the devisees remain as a corporation aggregate, and the estate vested in them as a conditional fee simple. It was not therefore technically a lapsed devise. We are now to consider the effect of it.

The third rule laid down by Chief Justice *Willes*, in *Doe* v. *Underdown*, and which has been recognised in a late case of *Doe* v. *Scott*, 3 Maule & Selw. 300, is, that when a testator has given away all his estate and interest in certain lands, so that if he were to die immediately nothing remains undisposed of, he cannot intend to give any thing in these lands to his residuary devisee. That would be properly the case of a lapsed devise of real estate, and the heir, and not the residuary devisee, shall have the benefit of it. The converse of that proposition, viz. that if the testator has not given away all his interest in the land, so that if he were to die immediately something would remain undisposed of, it is to be presumed that he intended to give the remainder in such lands to the residuary devisee, was the rule adopted in the case of *Doe* v. *Scott*; and that rule we think must be applied to the case at bar.

In *Doe* v. *Scott* the testator devised all his lands to J. M. and his heirs for ever, provided that he or his heirs do within six months after the decease of the devisor assure certain premises to R. M. and his children, viz. to R. M. for life, and his children in fee ; and he gave all the rest of his lands wheresoever &c to John and James Scott.   J. M. and R. M. died after the making of the will and before the testator, bachelors. . And the case was determined in favor of the Scotts, the residuary devisees, on the ground, that there was no devise of the fee absolutely ; for that if J. M. did not assure to R. M. for life, remainder in fee to his children, there would be an interest in the devisor undisposed of by that devise, which would pass by the residuary clause.   Lord *Ellenborough*, in delivering the opinion, states with approbation the rule laid down by Chief Justice *Willes* in *Doe* v. *Underdown*, that the intent of the testator is to be taken as things stood at the time when the will was made, and that the devise must mean the rest and residue unbequeathed at the time of making the will.

Now we think the principle of that decision is exceedingly applicable to the case at bar.   In this case, as in that, the devise was of a conditional and not of an absolute fee.   There was a contingent interest which the devisor might have disposed of if he had pleased, to take effect upon the forfeiture of the estate ; and he has in the residuary clause used words which are broad enough to pass the contingent interest.   It is clear that the testator did not dispose of his whole interest to the inhabitants.   The inhabitants might not choose to perform the condition, and so might forfeit their interest.   The testator might have limited over that contingent interest specially.   If he had done so, there can be no doubt but that it would have been a good limitation of his remaining interest.   He made no limitation over.   But nevertheless the devise did not lapse.   The inhabitants became seised of a fee simple conditional, and the contingent interest not otherwise disposed of was disposed of by the residuary clause.[1]

*Hayden*
*v.*
*Stoughton.*

540

---

[1] In Mr. Ram's work on Assets &c. *p.* 98, 99, it is said that " where a devise is on a condition, and the condition is broken, the testator's heir at law may enter and avoid the devise; but no one but the heir can do this. (Plowd

Hayden
*v.*
Stoughton.

We have been greatly assisted in this investigation by the able and learned arguments of the counsel. The result of the whole is, that the devise to the inhabitants of Stoughton was upon a condition subsequent, and the estate vested accordingly ; that they have forfeited the estate by neglecting to comply with the condition ; that the testator had an interest undisposed of, depending upon the contingency of the performance or non-performance of the condition, which passes to the residuary devisee ; and that the plaintiffs claiming under her are entitled to recover.[2]

The defendants must therefore be defaulted.

---

412, 413; 10 Co. 41 *b ;* Bro. Abr. *tit. Conditions, pl.* 43; 1 Ventr. 200; 1 Ves. sen. 422, 423 ; 1 Atk. 424.) Where a devise is a conditional limitation, and the condition is broken, so soon as it is broken the estate on condition ceases, and a person, who is not the testator's heir at law, as a remainder-man, or executory devisee, may be entitled to enter and supply the vacant possession. (10 Co. 40 *b ;* 2 Mod. 7 ; *Newis* v. *Lark,* Plowd. 408 ; *Wellock* v. *Hammond,* Cro. Eliz. 204.) Where there is a devise over on the conditional limitation, and the condition is broken, that devisee over is entitled to enter. But his entry is not necessary to acquire an estate; for immediately on the termination of the conditional limitation, if the limitation over is a remainder, such remainder-man has an estate in possession, (Plowd. 413 ; 10 Co. 40 *b,*) and if it is an executory devise in fee, such devisee over in fee has an estate in fee in possession. (*Anon.* 2 Mod. 7.)" See also *Baker* v. *Dodge,* 2 Pick. (2d ed.) 621, n. 2.

2 See 4 Kent's Comm. (3d ed.) 541 to 543 ; *Brigham* v. *Shattuck,* 10 Pick 306 ; *Clapp* v. *Stoughton,* 10 Pick. 463.